**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

FRANK DOMBOS,

Plaintiff,

v. No. 26-cv-516-JCH-JHR

SNMCF WARDEN,

Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss Plaintiff Frank Dombos' prisoner civil rights claims. (Doc. 2). Plaintiff is a state prisoner and is proceeding *pro se*. He raises various claims relating to an alleged lack of medical treatment at the Southern New Mexico Correctional Facility ("SNMCF"). *See* (Doc. 1-1) (Prisoner Civil Rights Complaint). Plaintiff filed a Response, styled as a Motion to Deny Defendant's Motion to Dismiss (Doc. 4), and a Supplement to his Response (Doc. 10). Defendant filed a Motion to Strike Plaintiff's Supplement. (Doc. 11). This matter is also before the Court on Plaintiff's Motion to Remand (Doc. 5), Plaintiff's Motion to Vacate Referral of Magistrate Judge (Doc. 9), and Plaintiff's Motion for a Status Conference (Doc. 12). Having reviewed the relevant law and arguments, the Court will deny Plaintiff's Motion to Remand, grant in part and deny in part Defendant's Motion to Dismiss, and deny the remaining motions.

**COMPLAINT**

On November 24, 2025, Plaintiff filed this action in the Third Judicial District for the State of New Mexico, County of Doña Ana, Cause No. D-307-CV-2025-03164, naming an unidentified Warden of the SNMCF as the sole Defendant in both his official and individual capacities.

Defendant subsequently removed the action pursuant to 28 U.S.C. §§ 1441(b) and 1446. (Doc. 1). In the Notice of Removal, Defendant asserts that this Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because Plaintiff raises a question of federal law, specifically under the Eighth Amendment of the United States Constitution. *Id.* at 2.

In his Complaint, Plaintiff indicates he is 71 years of age and confined to a wheelchair due to a traumatic brain injury he sustained in 2021. (Doc. 1-1 at 1). Plaintiff claims he was transferred to SNMCF in August of 2024 and placed in a housing unit that is not equipped with handicap accessible showers, requires the navigation of steps to enter or leave the unit, and has cell doors that are not wide enough to accommodate a wheelchair. *Id.* at 2. He states, however, that he has been assigned an inmate caregiver who picks up his wheelchair to get it up or down the steps, assists him in getting around the facility, and delivers his meals. *Id.*

In addition to his lower extremity disability, Plaintiff states he suffers from chronic obstructive pulmonary disease ("COPD") and emphysema. *Id.* In late 2024, a nurse practitioner at SNMCF prescribed daily breathing treatments due to his complaints of shortness of breath. *Id.* He alleges that from January of 2025 to present, SNMCF staff ignored his many requests to be transferred to the medical unit to receive his prescribed treatments and to access the wheelchair accessible shower. *Id.* at 3. The only accessible shower is located in the medical ward. *Id.* at 2, 5. He claims that nurses would call his unit to request his transfer to medical, but such requests would be ignored. *Id.* at 4. Plaintiff states he submitted complaints and grievances without resolution. *Id.* at 3. He estimates he has "been denied over (200) two hundred doses of [his] medications. And same, no showers as well, for over the 200 days." *Id.*

Plaintiff indicates he is bringing claims for: (1) deliberate indifference to his serious medical needs and cruel and unusual punishment under the Eighth Amendment; (2) violations of Title II of

the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA") for denial of access to medical care and wheelchair accessible showers; and (3) violations of his First Amendment rights for failure to adequately respond to his grievances. *Id.* at 4-6. Plaintiff alleges that the Defendant Warden breached his duty of care by failing to set up policies and procedures to prevent constitutional violations from occurring and was "well aware" that Plaintiff was being denied treatment. *Id.* at 7. Attached to Plaintiff's complaint are copies of three grievances and two affidavits from Brandan Lopez, Plaintiff's caregiver, and Roy Whatley, an SNMCF inmate. *Id.* at 10-21. Notably, both affidavits are written by Plaintiff, but purportedly signed by the affiants. *Id.*

For relief, Plaintiff seeks $500.00 per day starting in January of 2025 for each of the 207 days he was denied his medications, $25,000 for failure to supervise and train staff, and $150,000 for cruel and unusual punishment. *Id.* at 7-8. He does not request any injunctive relief.

**PLAINTIFF'S MOTION FOR REMAND**

Plaintiff filed a Motion to Remand this action back to the Third Judicial District for the State of New Mexico, County of Doña Ana, Cause No. D-307-CV-2025-03164. (Doc. 5). In his Motion, Plaintiff argues that "the well pleaded complaint Rule makes [him] the 'master' of his claim" and he should be permitted to proceed in state court where he filed this action. *Id.* at 1. In response, Defendant asks the Court to deny the Motion to Remand because Plaintiff's claims arise under the United States Constitution and federal statutes. (Doc. 8). Plaintiff did not file a reply to the Motion to Remand and his time to do so has expired.

A defendant may remove a case from a state court to federal court when original jurisdiction is present. 28 U.S.C. § 1441(a). A claim that arises "under the Constitution, law, or treaties of the United States" is one over which the district courts of the United States have original jurisdiction. 28 U.S.C. § 1331. Regarding a federal district court's jurisdiction, the Tenth Circuit Court of

Appeals has stated:

> In *Bell v. Hood*, the Supreme Court explained that "where the complaint . . . is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions[,] . . . *must* entertain the suit . . ." 327 U.S. 678, 681-82, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (emphasis added). The two "possible exceptions" are claims that "clearly appear[ ] to be immaterial and made solely for the purpose of obtaining jurisdiction" or claims that are "wholly insubstantial and frivolous." *Id.* at 682-83, 66 S.Ct. 773; *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005).

*Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1095 (10th Cir. 2005), *opinion vacated in part on other grounds*, 449 F.3d 1097 (10th Cir. 2006).

"[T]he [well-pleaded complaint] rule makes the plaintiff the master of the claim" in that "he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987). "[T]he removal court should inspect the complaint carefully to determine whether a federal claim is necessarily presented, even if the plaintiff has couched his pleading exclusively in terms of state law. The reviewing court looks to the substance of the complaint, not the labels used in it." *In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980), *cert. denied*, 450 U.S. 949 (1981) (citation omitted). The Federal right "must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Natl Bank*, 299 U.S. 109, 112 (1936).

Here, Plaintiff does not argue that his complaint only consists of state claims. Rather, his position is that, as the individual filing the action, he is the "master of his claim" and should be able to choose to litigate his federal causes of action in state court. While it is true that Plaintiff has the ability to draft his complaint exclusively in terms of state law, he does not have the option of choosing to litigate his exclusively federal claims in state court after a defendant appropriately removes the action based on federal-question jurisdiction. 28 U.S.C. § 1441(a) and (b) permit the removal of an action from state to federal court when the federal court has "original jurisdiction"

over the action because it is "founded on a claim or right arising" under federal law.

Plaintiff's Complaint brings claims under two federal statutes, the ADA and the RA, and the First and Eighth Amendments of the United States Constitution. (Doc. 1-1 at 4-6). A claim of deliberate indifference to the serious medical needs of prisoners is cognizable under Section 1983 as a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses prison officials' deliberate indifference. *See Howard v. Waide*, 534 F.3d 1227, 1235 (10th Cir. 2008) (citing *Estelle*, 429 U.S. at 105). There is no doubt that the allegations in Plaintiff's Complaint are founded on claims or rights arising under federal law and that original federal question jurisdiction exists. The statutory criteria necessary for removal have been met in this case. Accordingly, Plaintiff's Motion to Remand will be denied.

**DEFENDANT'S MOTION TO DISMISS**

**A. Legal Standard**

Defendant filed the instant Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 2). Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citation omitted).

While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (cleaned up).

**B. Official Capacity Claims Brought Under 42 U.S.C. § 1983**

The Complaint alleges deliberate indifference to Plaintiff's serious medical needs and cruel and usual punishment, both of which are cognizable under Section 1983 as a violation of the Eighth Amendment. *See Estelle*, 429 U.S. at 104-05. Plaintiff names an unidentified Warden of SNMCF in his official capacity as Defendant. The Warden of SNMCF is an employee of the State of New Mexico through his or her employment in the State-operated detention facility. In the Motion to Dismiss, Defendant argues that Plaintiff's official capacity claims brought pursuant to Section 1983 must be dismissed due to Eleventh Amendment Immunity. (Doc. 2 at 4-6). The Court agrees.

Any claim against a government official in their "official" capacity is, in actuality, a claim against the official's office, and thus the state, as the official is simply an agent of the government entity for which they work. *Brown v. Montoya*, 662 F.3d 1082, 1163 (10th Cir. 2011) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). *See also Johnson v. Board of Commissioners for the County of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996) and *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). Consequently, an official capacity suit against the

Warden of SNMCF is an action against the State of New Mexico.

A state, and its agencies, have immunity from a Section 1983 suit under the Eleventh Amendment, and thus cannot be sued in federal court by a private individual with three exceptions: "(1) the state consents to suit; (2) Congress expressly abrogates the states' immunity; or (3) the citizen sues a state official pursuant to *Ex Parte Young*, 209 U.S. 123 (1908)." *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006), *cert denied*, 549 U.S. 1078 (2006). *See also Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). First, there is no indication in the record before the Court that the State of New Mexico has consented to suit under Section 1983 in federal court. Second, the United States Supreme Court has held a "State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 671 (2002) (citing *Will*, 491 U.S. at 66) (holding that a state official is not a person who has the capacity to be sued under Section 1983, unless the state official has been sued for prospective injunctive relief)). Thus, it is clear that Congress has not expressly abrogated a state's immunity under Section 1983 in a suit where plaintiff solely seeks monetary damages. Finally, there is no pleading or argument which addresses an exception to immunity pursuant to *Ex Parte Young*.

For these reasons, Plaintiff's official capacity claims brought under Section 1983 for deliberate indifference and cruel and unusual punishment against the Warden of SNMCF must be dismissed.

**C. Individual Capacity Claims Brought Under 42 U.S.C. § 1983**

Plaintiff also alleges the same Eighth Amendment claims against the Defendant Warden in his individual capacity. (Doc. 1-1). He claims that the Warden was "well aware" that he was being denied treatment. *Id.* at 4. He also alleges that it "was the duty of the Warden to set up policies

[and] procedures to staff that help guide subordinates conduct so that violations of those policies and violations of constitutional rights do not occur." (Doc. 1-1 at 7). In the instant Motion to Dismiss, Defendant argues the Eighth Amendment claims should be dismissed because: (1) the allegation that the Warden had knowledge of Plaintiff's lack of treatment is conclusory; and (2) the Warden's supervisory role does not, by itself, subject him to liability.

The Eighth Amendment protects against the infliction of cruel and unusual punishments. *See* U.S. Const. amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment encompasses prison officials' deliberate indifference. *See Howard v. Waide*, 534 F.3d 1227, 1235 (10th Cir. 2008) (citing *Estelle*, 429 U.S. 97, 105). Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See Estelle*, 429 U.S. at 104-05. Denying or delaying access to medical care or intentionally interfering with the treatment once prescribed, may manifest deliberate indifference and state a cause of action under § 1983. *Id.*

Determining the sufficiency of an Eighth Amendment claim for deliberate indifference involves a two-pronged inquiry, comprised of an objective component and a subjective component. *See Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). With respect to the objective prong, a medical need is classified as serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (internal quotation and citation omitted).

Under the subjective prong, the defendant must have a sufficiently culpable state of mind. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Self*, 439 F.3d at 1230-31. In other words, the plaintiff must establish that the defendant "knew he faced a substantial risk of harm and disregarded

that risk, by failing to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal citation and quotation omitted). Mere negligence is not sufficient. *Farmer*, 511 U.S. at 835. Rather, "[t]he subjective component is akin to 'recklessness in the criminal law,' where, to act recklessly, a 'person must "consciously disregard" a substantial risk of serious harm.'" *Self*, 439 F.3d at 1231 (quoting *Farmer*, 511 U.S. at 837, 839). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 837) (alteration in original).

Further, a civil rights action against a public official may not be based solely on a theory of respondeat superior liability for the actions of co-workers or subordinates. A plaintiff must plead that the government official, through the official's own individual actions, violated the Constitution. *Ashcroft*, 556 U.S. at 676. Plaintiff must allege some personal involvement by an identified official in the alleged constitutional violation to succeed under Section 1983. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). It is particularly important that a plaintiff's complaint "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in the original). Consequently, Plaintiff's Eighth Amendment claims premised on respondeat superior cannot proceed.

In the instant Motion to Dismiss, Defendant does not challenge the objective prong. (Doc. 2 at 8). Instead, Defendant argues that the Complaint fails to adequately plead that the unidentified Defendant Warden actually knew about the alleged failure to provide him with his prescribed breathing treatments. *Id.* at 8-11. In his Response, Plaintiff states that he "contacted," "wrote letters," and submitted grievances to the Defendant Warden and "others in authority." (Doc. 4 at

13-14). Approximately two weeks after the Motion to Dismiss was fully briefed, Plaintiff submitted a Supplement to his Response, providing the Court with copies of four letters he sent to the Defendant Warden. (Doc. 10). Three of those letters, dated January 1, 2025, May 12, 2025, and September 2, 2025, appear to inform the Warden of staff refusing his prescribed medical treatments. *Id.* at 5-8. Although Defendant asks for the Supplement to be stricken because it was untimely filed without seeking leave, the Court will, in the interests of justice, permit its inclusion to the record.

The Court does, however, agree with Defendant that Plaintiff has not sufficiently alleged that the Warden was directly responsible for an alleged constitutional violation. Plaintiff attempts to hold the Warden liable merely because of his supervisory position, and on the basis of letters and grievances that Plaintiff indicates he sent to the Warden on numerous occasions that were ignored. However, the courts have found that simply sending "correspondence [to the warden] outlining [a] complaint . . . without more, does not sufficiently implicate the warden under § 1983." *Davis v. Arkansas Valley Corr. Facility*, 99 Fed. App'x 838, 843 (10th Cir. 2004) (unpublished decision); *see also Volk v. Coler*, 845 F.2d 1422, 1432 (7th Cir. 1988) (holding that director of state agency did not personally participate in constitutional violation merely because he was aware of grievance); *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."); *Doyle v. Cella*, 2008 WL 4490111, at *2 (D. Colo. Sept. 30, 2008) (unpublished decision) (finding bare allegation that the defendant warden was "made aware" of constitutional violations insufficient to establish personal participation of the defendant). Therefore, because Plaintiff has not sufficiently alleged that the Defendant Warden caused or participated in the alleged constitutional violations, or that an affirmative link exists between the constitutional violations and the Warden's failure to

supervise, there is no basis for holding him liable pursuant to Section 1983.

For these reasons, Plaintiff's individual capacity claims brought under the Eighth Amendment against the Warden of SNMCF must be dismissed.

**D. The Americans with Disabilities Act and the Rehabilitation Act**

Plaintiff also alleges claims under the ADA and RA based on the deliberate indifference to his serious medical needs. (Doc. 1-1 at 4). He asserts he was prescribed a daily breathing treatment, which required him to be transported to the medical unit each day, but was oftentimes prevented from receiving such treatment. *Id.* In the instant Motion to Dismiss, Defendant argues that Plaintiff's ADA and RA claims fail because, although these federal statutes afford disabled individuals the right to access a public entity's programs and services, they are not a conduit for alleging failure to treat claims. (Doc. 2 at 6-7). In response, Plaintiff contends that his allegations under the ADA and RA should not be dismissed because they are not failure to treat claims. (Doc. 4 at 7-8). Rather, he asserts that his allegations brought under these federal statutes should be understood as a denial of a benefit that he was entitled to receive because of his disability.

As a preliminary matter, unlike Section 1983, the Eleventh Amendment does not bar an official capacity claim brought pursuant to Title II of the ADA or the RA. To the contrary, ADA and RA claims *must* be brought against a governmental entity or a state agent in their official capacity, not in their individual capacity. *See Brooks v. Colorado Dep't of Corr.*, 12 F.4th 1160, 1167 (10th Cir. 2021) (while Title II of the ADA does not allow for individual capacity suits, it does permit claims against a state official in his or her official capacity because they represent the entity in their official role); *Ombe v. Martinez*, No. 14-CV-00763 RB/KBM, 2015 WL 13855233, at *3 (D.N.M. Sept. 3, 2015) (claims brought under the ADA or RA cannot be maintained against

individual defendants). For this reason, to the extent Plaintiff brings individual capacity claims against the Defendant Warden under the ADA or RA, such claims must be dismissed.

To state an official capacity claim under the ADA, Plaintiff must allege that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) the exclusion or denial of benefits was by reason of the disability. 42 U.S.C. § 12132; *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). Similarly, the RA states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The "[a]nalysis of a claim under Title II of the ADA is identical to an analysis under the Rehabilitation Act," and can be reviewed together. *Kimble v. Douglas Cty. Sch. Dist. RE-1*, 925 F. Supp. 2d 1176, 1182 (D. Colo. 2013) (citing *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 608 n.7 (10th Cir. 1998)).

Here, Plaintiff alleges, and Defendant does not dispute, that he has a qualifying disability. Plaintiff states that on more than 200 occasions between January of 2025 to the present he has been deprived access to his prescribed medical treatments and to a handicap accessible shower. (Doc. 1-1 at 3). Defendant does not contest that Plaintiff did, in fact, have a medical directive to receive daily breathing treatments for his COPD and emphysema or that the only handicap accessible shower was located in the medical unit. Plaintiff explicitly alleges that nurses would call his housing unit to request his transfer to medical, but guards would fail to comply. *Id.* at 4. In his Response to the Motion to Dismiss, Plaintiff indicated there were times when guards would not allow his aide from assisting him to the medical unit, which would prevent him from receiving treatment. (Doc. 4 at 9). He further clarifies in his Response that his ADA and RA claims are not

based on the adequacy of medical treatment provided but, rather, the barrier the Defendant often imposed. *Id.* at 7-8.

In *Ingram v. Clements*, the Tenth Circuit reversed the district court's dismissal of ADA and RA claims in which the inmate plaintiff alleged that he was excluded from and deprived access to his prescribed medications. 705 F. App'x 721, 725 (10th Cir. 2017). The plaintiff in *Ingram* was medically restricted from prolonged standing, but was often required to stand in line for an extended period of time at the medical unit, which would cause him to forego receipt of his prescribed medications. *Id.* The Tenth Circuit held:

> Assertions of medical malpractice or failure to provide medical treatment generally do not rise to the level of an ADA or Rehabilitation Act violation. *See, e.g., Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005). Ingram's claim, however, does not involve medical treatment but instead alleges that defendants have created a temporal/spatial barrier to his obtaining the care already prescribed to him. These allegations are sufficient to state a non-frivolous claim under the ADA and Rehabilitation Act.

*Id.* at 726.

Here, Plaintiff's aide was prevented from assisting him and guards would deny him access to the medical unit despite nurses calling for him to be seen. Plaintiff in this case alleges that Defendant created a barrier to obtaining the specific medical care prescribed to him. Following *Ingram*, this Court will decline to dismiss Plaintiff's ADA and RA claims brought against the Defendant Warden in his official capacity. The Court is also not persuaded that the Warden would be entitled to qualified immunity on these claims.

**E. First Amendment**

Plaintiff alleges Defendant violated his First Amendment rights because he "submitted informal complaints, formal grievances, monthly about his treatment," which were ignored. (Doc. 1-1 at 3). Plaintiff estimates that "over 98% were either never responded to, or refused[.]" *Id.* at

5. Defendant argues that his First Amendment claim fails for failure to state a claim. The Court agrees.

First, "there is no independent constitutional right to state administrative grievance procedures." *Von Hallcy v. Clements*, No. 12-1381, 519 Fed. App'x 521, 523 (10th Cir. 2013) (unpublished) (quoting *Boyd v. Werholtz*, No. 10-3284, 443 Fed. App'x 331, 332 (10th Cir. 2011) (unpublished)). "Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process." *Id.*

Second, in order to establish a First Amendment retaliation claim, the following elements must be shown: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) defendant's actions caused injury to plaintiff that would chill a person of ordinary firmness from continuing to engage in the activity; and (3) the adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203-04 (10th Cir. 2007). To the extent Plaintiff is accusing the Defendant Warden of retaliation for grievances filed through the prison grievance process, he has not shown any evidence that his use of the grievance process was the "but for" cause of Defendant denying his treatment or any other benefits.

For these reasons, Plaintiff's official and individual capacity claims brought under the First Amendment against the Warden of SNMCF must be dismissed.

**PLAINTIFF'S MOTION TO VACATE REFERRAL AND MOTION FOR A STATUS CONFERENCE**

Finally, the Court has reviewed Plaintiff's Motion to Vacate the Referral of the Magistrate Judge (Doc. 9), and Motion for a Status Conference (Doc. 12). Plaintiff indicates he does not consent to the referral of Magistrate Judge Jerry H. Ritter because he was "involved" in a prior

criminal case. No consent is required because this case is assigned to the undersigned, a District Judge, for the disposition of this matter. Plaintiff's request to vacate the referral will be denied. Further, at this stage of the litigation, there is no need for a status conference. A Scheduling Order will be forthcoming.

**IT IS ORDERED** that Plaintiff's Motion to Remand (Doc. 5) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint For Failure to State a Claim (Doc. 2) is **GRANTED IN PART** and **DENIED IN PART** as follows: Plaintiff's official and individual capacity Eighth Amendment claims brought against Defendant pursuant to 42 U.S.C. § 1983 are dismissed without prejudice; Plaintiff's individual capacity claims brought against Defendant pursuant to the Americans with Disabilities Act and the Rehabilitation Act are dismissed without prejudice; and Plaintiff's official and individual capacity claims brought against Defendant pursuant to the First Amendment are dismissed without prejudice. Plaintiff may proceed only on his official capacity claims brought against Defendant pursuant to the Americans with Disabilities Act and the Rehabilitation Act.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Deny Defendant's Motion to Dismiss (Doc. 4) is **GRANTED IN PART** and **DENIED IN PART** as indicated above.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Supplement (Doc. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Vacate the Referral of Magistrate Judge (Doc. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Status Conference (Doc. 12) is **DENIED.**

SENIOR UNITED STATES DISTRICT JUDGE